UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCE COSTELLO, an infant under the age of 14 years, by his mother and natural guardian, VENUS COSTELLO, AND VENUS COSTELLO, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION I/P/A TARGET CORPORATE SERVICES INC. A/K/A TARGET,<br><br>Defendant. | Civ. No. 16-3314 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

In September 2015, a five-year old child, Vince Costello, went to a Target store in New Jersey with his aunt, Liza Costello. After shopping, Vince and Liza[1] were waiting outside the store for a ride home when Vince began playing on top of a red, spherical bollard located near the front of the store. Unfortunately, after playing for some time on the bollard, Vince fell off and injured his arm. In this lawsuit, Vince, through his guardian, asserts that Target was negligent for placing the bollards, an allegedly dangerous condition and attractive nuisance, outside the store.

Now pending before the Court is the motion for summary judgment filed by the defendant Target Corporation i/p/a Target Corporate Services a/k/a Target ("Target"). (DE 88) Target contends that plaintiffs' claims should be dismissed because there are no material facts in dispute concerning the condition and nature of the bollards, which are not a dangerous condition.

---

[1] Because three persons with the same surname are involved in this case, I will refer to the child as "Vince" and his aunt as "Liza." No disrespect is intended.

1

According to Target, the bollards violate no industry standard or code. Plaintiffs have proffered no evidence that they are defective or that Target was otherwise aware that they could cause an inherent risk of injury. Target also contends that the doctrine of "attractive nuisance" does not apply here as that doctrine is reserved for unsupervised infant trespassers; the duty of care owed, says Target, is the more general one owed to a business invitee.

Plaintiffs submitted a brief in opposition to the motion. (DE 92) They concede that the bollards do not violate any codes or standards. Rather, say plaintiffs, the bollard in question was dangerous because it was attractive to children who would view it as a large ball or plaything. As such, Target should have known that children would be attracted to these "balls" and should have taken better care to make these objects safer.

For the reasons explained herein, I will grant Target's motion for summary judgment.

## I. Summary[2]

Target's counsel submitted a statement of undisputed facts in accordance with Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1. Plaintiffs' counsel failed to submit a responsive statement of undisputed facts.[3] Nor does plaintiffs' opposition brief make any meaningful

---

[2] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"SOF" = Statement of undisputed facts filed by defendant Target (DE 88-4)

[3] Local Rule 56.1 states in part, "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."

Local Rule 56.1 further requires that "each statement of material facts shall be a separate document (not part of a brief)." If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it ...." Fed. R. Civ. P. 56(e). Local Civil

effort to respond to Target's undisputed facts.[4] Instead, the few well supported facts cited in plaintiffs' brief coincide with those proffered by Target and appear to be undisputed.

### A. The September 17, 2015 Incident

On September 17, 2015, Vince Costello was at the Target store located at 100 14th Street in Jersey City, New Jersey. (SOF ¶ 1) Vince Costello at the time was 5 years old. (*Id.* ¶ 2) Vince was taken to the Target by his aunt Liza Costello, who was caring for him that day. (*Id.* ¶ 3)

At approximately 7:52 pm on September 17 Target surveillance cameras recorded Vince and his aunt leaving the store. (*Id.* ¶¶ 4, 6) Vince approaches a large "red ball," called a bollard, while Liza is seen taking a seat on a bench near the bollards. (*Id.* ¶ 4–5) Target's director of construction testified that these bollards are visual cues to separate the sidewalk from traffic and act as a barrier between pedestrians walking on the sidewalk and cars driving in the road or parking lot. (*Id.* ¶ 4–5) He also stated that there had been no prior

---

Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues,... the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

[4]     Plaintiffs' brief repeatedly makes statements that are seemingly meant to be taken as "facts." Plaintiffs' counsel cites to noting in the record to support statements such as "By defendant's own words, there was no purpose for the red bollards other than a visual cue. . . . they were merely an[] advertising symbol . . . and is totally unnecessary as they were not in place or used prior to 2009"; "the defendant conducted absolutely no tests as to the safety of the design"; "the defendant would like the Court here to accept that the bollard was not an attractive nuisance to a child, which it clearly is." (*See* DE 92 ¶¶ 3–6) Such unsupported statements will be disregarded.

3

accidents or lawsuits involving children or adults falling off, or being injured by, the bollards. (DE 88-12 at 15)

From approximately 7:53 pm until 8:11 pm, Vince is seen in the video climbing on and off one of the bollards. (*Id.* ¶¶6–15) At various points, he is climbing onto one of the bollards, standing on it, lying across it, kneeling on it, and jumping off of it. (*Id.*) For example, around 7:59 pm Vince jumps off the bollard and briefly walks over to his aunt who is seated on a bench nearby, and then returns to playing on the bollard. (*Id.* ¶¶ 7–8) AAround 8:07 pm, Vince loses both of his shoes while sitting on the bollard; Liza walks over to retrieve the shoes. (*Id.* ¶ 13) At approximately 8:09 pm, as Liza is returning Vince's shoes to him, a Target employee walks through the area. (*Id.* ¶ 12) Vince is then seen putting his shoes back on and running back to the bollard, jumping back onto it. He then stands on the bollard for approximately 80 seconds. (*Id.* ¶ 14) Vince then crouches on the bollard, and, at approximately 8:11 pm, he falls off. (*Id.* ¶ 14) Liza then walks over to Vince, picks him up, and brings him back to the bench. (*Id.* ¶ 15)

Plaintiffs concede that "it is clear from the video that the infant plaintiff climbed on and played with the bollard." (*See* DE 92 at 9) A triable issue of fact arises, according to the plaintiff, because the "video is silent and one cannot know if in fact [Liza] is warning the infant plaintiff to stay off the bollard. . . one simply cannot tell from the video the verbal interaction between the two parties." (*Id.*) Liza did testify, however. At her deposition, Liza confirmed that she took Vince to Target. (*See* Ex. D., DE 88-10 (Liza Costello Deposition transcript) p. 43–44) She testified that after shopping, they walked outside the store and were waiting for a ride home. (*Id.* p. 53–54) She saw Vince approach one of the balls and saw "him trying to climb on top of it. He was sitting down and then he was just playing on it." (*Id.* p. 60). At one point, Vince demonstrated for her how he was pretending to "fly" on top of the bollard. (*Id.* p. 79–80) She testified that she told Vince to stop climbing on the bollard because she knew "he could fall" and knew that it could be dangerous for a

five-year-old to be on the bollard. (*Id.* p. 60, 65, 78–79) She also testified that after she told Vince to come back towards her, she observed him hugging the bollard. At that point she turned away for "15 seconds" to answer a phone call, and then heard him screaming and running back to her at the bench. (*Id.* p. 61–63, 73–75) She testified that she did not actually see Vince on the bollard at the time of the fall, but admitted that she had previously seen him playing on the bollard. (*Id.* p. 73–74, 76)

### B. Procedural History

On April 27, 2016, plaintiffs filed a complaint in the Supreme Court of the State of New York, County of Kings. (DE 1) The complaint asserts three causes of action: (1) negligence; (2) loss of consortium on behalf of Vince's mother, Venus Costello; and (3) a claim for medical expenses to the extent that "losses suffered by plaintiff are not covered by the medpay insurance benefits." (DE 1-2 at 5)

Target was served with the complaint on May 11, 2016 (*Id.*) On May 27, 2016, Target removed this action to the U.S. District Court for the Eastern District of New York based on diversity jurisdiction, 28 U.S.C. § 1332. (*Id.*)

On June 8, 2016, venue of this action was transferred to the District of New Jersey, where it was assigned to me. (DE 7; DE 8) Discovery then commenced. On February 14, 2018, Target filed a third party complaint (DE 42) asserting that any damages awarded in this action were due solely to the negligent conduct of Liza Costello. Liza Costello did not respond to the third-party complaint, and on July 6, 2018, the Clerk entered default against her. (DE 53)

On April 2, 2019, the parties participated in a nonbinding arbitration and an award was filed on April 11, 2019. (DE 78) Plaintiffs then requested a trial de novo. (DE 80) Since then the parties completed discovery; expert discovery was completed on September 10, 2019; and the parties were authorized to file motions for summary judgment. (DE 85) On October 24, 2019, Target filed its motion for summary judgment. (DE 88)

### C. Plaintiffs' Expert

Plaintiffs retained Robert Sugarman, PhD, PE to provide an expert report in this matter. (*See* DE 88-13 (Expert Report of Robert Sugarman)) Dr. Sugarman holds a doctorate in experimental psychology. (DE 88-14 (Sugarman Deposition Transcript) p. 17–19) Dr. Sugarman also holds a Bachelor of Arts degree in physics; he has a certificate in engineering and is a licensed engineer in California. (*Id.*) Dr. Sugarman is not a certified safety professional, but considers himself a "human factors specialist." (*Id.* p. 21–25) The Sugarman report, 3 pages long, contains 11 numbered "opinions and conclusions to a scientific certainty." Its ultimate conclusion is as follows:

> Based on my education in human factors psychology and decades of experience in analyzing human behavior, resulting in being elected to Fellow of the Human Factors and Ergonomics Society, the conclusions enumerated above lead me to the opinion within a scientific certainty, that the large, red balls decorating the entrance to the Target store were an attraction to children, and specifically to Vince Costello, as a large toy, with inherent slip and fall hazards that are not immediately obvious to children or adults, and served no purpose that warranted the risk to the public.

(DE 88-13 at 4)

Dr. Sugarman testified that his report opines on the layout of the bollards, their location, and instructions or warnings in the area, the risk involved in playing on the bollards and their general attractiveness as a "plaything." (DE 88-14 p. 53–56) He reviewed the testimony of defendant's expert and Liza Costello; however, Dr. Sugarman did not review the store's surveillance footage of the incident and did not visit the Target store in question to perform any testing of the bollards. (*Id.* p. 56–58, 73–74) He believed that Vince only hugged the bollard, was playing around it, and while trying to get up on it, fell and injured himself. (*Id.* p. 109–111) Moreover, Dr. Sugarman attributes no fault for the accident to Liza Costello and discredits her testimony that she understood the bollard to be dangerous because, in his opinion, defense counsel's questioning of Liza somehow tricked her into perceiving the bollards to be dangerous. (*Id.* p. 89–92) Instead, he attributes

6

100% of the fault to Target for placing these bollards outside the store because "children play with toys" and "infants play with balls much more readily" than alternative structures that Target could have used. (*Id.* p. 107–108) Dr. Sugarman concedes that the bollards did not violate any established code or standard. (*Id.* p. 113) Nevertheless, these bollards were "appearing as large red balls, were attractive to children and . . . presented a hazard for children. They could have been replaced by alternative designs that would be less attractive to children and would not pose a hazard to children." (DE 88-13 at 3)[5]

Dr. Sugarman conceded at his deposition that if a child was jumping up and down on the red bollard, a guardian would have to know that such acts would be dangerous and that no additional warning from Target would be necessary. (DE 88-14 p. 111–112)[6] Moreover, he agreed that there was nothing

---

[5]     Dr. Sugarman submits an "expert affidavit in opposition" to the motion for summary judgment filed by Target. (DE 92 at 15–17). The affidavit fails to refer to any specific testimony or documents in the record and instead offers conclusions and opinions. This affidavit does not comply with Rule 56 or 56.1 and no weight will be given to it, *see supra*, n. 2. "As with all other evidence submitted on a motion for summary judgment, expert affidavits must be reviewed in light of Fed. R. Civ. P. 56." *Gower v. Savage Arms, Inc.*, 166 F. Supp. 2d 240, 252 (E.D. Pa. 2001) ("Where an expert presents 'nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected', such testimony will be insufficient to defeat a motion for summary judgment." (citing *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88 (1st Cir. 1993))). Consequently, the expert affidavit does not satisfy the requirements of Federal Rule of Civil Procedure 56(c)(4), which requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

[6]     The exchange went like so:

> Q.   Hypothetically, if a child is jumping up and down on the sphere, would you consider that dangerous?
>
> A.   Yes.
>
> Q.   Is that something that a guardian or an adult should recognize as dangerous?
>
> A.   If the kid can jump up and stand on it, yes, a kid of his age, that would be considered dangerous.
>
> Q.   And no warning signs would be needed for that if that occurred because an adult or guardian would have to know that would be dangerous, correct?

7

inherently wrong with having a red ball outside the store, such as the bollards here, if a guardian kept a child off the ball. (*Id.* p. 113–114)

## II. Discussion

### A. Legal standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322-23. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

---

A. Correct.
(DE 88-14 p. 111–112)

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Analysis

Plaintiffs' claims are founded on a negligence theory of liability. Therefore, plaintiffs must prove: (1) the defendant owed plaintiff a duty; (2) there was a breach of that duty; and (3) the breach proximately caused the injury. *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990). Failure to establish any one of these elements is grounds for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

9

L.Ed.2d 265 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### i.  Target Owed Plaintiffs a Duty of Care

The question of whether a duty exists is a matter of law properly decided by the Court. *Strachan v. John F. Kennedy Memorial Hosp.*, 109 N.J. 523, 529, 538 A.2d 346 (1988). Determination of the existence of a duty "is largely a question of fairness or policy." *Id.* "The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Kelly v. Gwinnell*, 96 N.J. 538, 544, 476 A.2d 1219 (1984).

The plaintiffs claim that there is an issue of material fact concerning the level of duty owed to Vince. That issue depends on whether Vince would be classified as a business invitee or an infant-trespasser, as to whom the bollard could have been an "attractive nuisance." Plaintiffs theorize that Vince should be treated as a child trespasser because he was only five and could not have fully comprehended the danger.

On any version of the facts, the attractive nuisance doctrine does not apply here:

> The doctrine of attractive nuisance is applicable to "children." *Restatement (Second) of Torts: Condition and Use Of Land* § 339. Under certain conditions, it subjects a landowner to liability for physical harm that befalls a child whose trespass was "caused by an artificial condition upon the land." *Ibid.* Those conditions include, among others, that "the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." *Restatement (Second) of Torts: Condition and Use Of Land* § 339(c). The doctrine applies "the infant-trespasser" exception to the general principle that a landowner owes "slight" duty to a trespasser. *McColley by McColley v. Edison Corp. Ctr.*, 303 N.J. Super. 420, 426–27 (App.Div.1997). It is predicated, in part, on the recognition that parents cannot always be with their children. *Strang v. S. Jersey Broadcasting Co.*, 9 N.J. 38, 45–46 (1952).

10

*Edmond v. Brosius*, No. A-6244-06T3, 2009 WL 1576747, at *12 (N.J. Super. Ct. App. Div. June 8, 2009). Notably, however, "The child trespasser exception, also known as the attractive nuisance doctrine, is limited to instances in which children unlawfully enter or remain on land." *Estate of Zimmerman v. Se. Pennsylvania Transp. Auth.*, 168 F.3d 680, 687–88 (3d Cir. 1999).

The record is clear that Vince was neither unsupervised nor a trespasser on Target's premises. Vince was at a Target store, a retail business open to the public, during business hours. He was accompanied by an adult, Liza Costello, who admitted to being entrusted with his care that day. (*See* 88-10 (Liza Costello Deposition) p. 79) The attractive nuisance doctrine does not apply.

That is not to say that Target did not owe a duty of care. That duty of care, however, was the more general duty of care to business invitees, who foreseeably would be accompanied by children.[7] The common law imposes a duty of care on business owners to maintain safe premises for their customers. *See Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003); *Kuzmicz v. Ivy Hill Park Apartments, Inc.*, 147 N.J. 510, 517 (1997). Under New Jersey law, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation." *Nisivoccia*, 175 N.J. at 563. This duty arises out of the fact that business owners "are in the best position to control the risk of harm. Ownership or control of the premises, for example, enables a party to prevent the harm." *Kuzmicz*, 147 N.J. at 517. That standard of care encompasses a duty "to guard against any dangerous conditions on [the] property that the owner either knows about or should have discovered[,] ... [and] to conduct a reasonable inspection to discover latent dangerous conditions." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 434 (1993) (citations omitted).

---

[7] Much of the expert testimony regarding the bollard's attractiveness as a plaything seems to be directed to the inapplicable "attractive nuisance" standard. One is tempted to observe that a five-year-old child knows if the nuisance is attractive or not, without the benefit of an advanced degree. Still, the issue is moot, given that the doctrine is inapplicable as a matter of law.

11

Target, then, is not liable as the maintainer of an attractive nuisance, but did owe a business-invitee duty of care to its customers. I next consider whether Target breached that duty.

### ii. Breach of the Duty of Care

Plaintiffs assert that there are material facts in dispute as to whether Target breached its duty of care by failing to establish a safe place and by allowing the bollard to be installed without conducting any safety testing. (DE 92 at 6–7) Plaintiffs also point out that Target, while it videotaped the events, did not intervene or warn Vince or his aunt. (*Id.* at 8) Defendants respond that there is no evidence of a dangerous condition on the property. (DE 88-5 at 9) Target had no advance warning that the bollards were dangerous, and there had been no prior similar accidents. (*Id.* at 10–11). The expert testimony, it says, is highly flawed and does not establish a breach. (*Id.* at 11–13) And, as Plaintiffs concede, there was no design flaw or defect in the bollard itself. (*Id.* at 9–10, 12)

"Ordinarily an injured plaintiff asserting a breach of [a duty to a business invitee] must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia,* 175 N.J. at 818. A defendant has constructive notice when the condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Parmenter v. Jarvis Drug Stores, Inc.*, 48 N.J.Super. 507, 510, 138 A.2d 548 (App.Div.1957).

> A dangerous condition is found when there is some physical defect in the property. *See, e.g.*, *Atalese v. Long Beach Twp.*, 365 N.J. Super. 1, 5 (App. Div. 2003) (finding dangerous condition in uneven sidewalk); *Daniel v. State Dept. of Transp.*, 239 N.J. Super. 563, 589-590 (App. Div. 1990). . . Reasonable use or misuse of property cannot create a dangerous condition without a physical defect in the property itself. *See, e.g., Levin*, 133 N.J. at 49-50.

*Aybar v. Borough of Carteret*, No. A-0317-17T3, 2019 WL 272481, at *2 (N.J. Super. Ct. App. Div. Jan. 22, 2019); *see also Longo v. Aprile*, 374 N.J. Super.

469, 474–75 (N.J. Sup. Ct. App. Div. 2004) ("[A] dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties." (citation omitted)).

Here, there is no evidence that the bollard was improperly installed, that it had a defect, that it was dangerously slippery, or that it was defectively designed. Nor is there a contention that it violated any codes or standards. True, it was spherical, but everything has to have some shape, and there is no evidence that this shape was more dangerous than, say, a cube or some sort of stanchion.[8] Plaintiffs do not really dispute any of this.

Nor is there any evidence that Target had either constructive or actual knowledge that the bollard posed an unacceptable danger. Any object, of course, may be involved in causing an injury. There is no evidence, however, of any accident resulting from any individual's being on one of these bollards.[9] When a Target employee was surveying the area, Vince was not on the bollard. If a Target employee had been monitoring the surveillance footage in real time, which was not shown, that employee would have seen Vince successfully playing on the bollard for the better part of 20 minutes while an adult repeatedly interacted with him. Under these circumstances, I do not find that the bollard in and of itself was a dangerous condition or that Target had notice of any such risk.

Plaintiffs rely substantially on Dr. Sugarman's contentions that children by their very nature are attracted to objects that resemble toys, such as these bollards, which resemble red balls. But "assumptions about [a] child's behavior

---

[8] It is worth noting that the bollard is itself a safety device; it is a barrier designed to separate pedestrians from moving cars in the street or parking lot.

[9] Such round bollards, suggestive of Target's trademark, are a common feature of Target stores. A brief Westlaw survey revealed no case, federal or state, claiming injury from one of these bollards at any of the chain's many stores. Oddly, there was a case in this district of property damage resulting from a pickup truck's crashing into a bollard, which then rolled into a car. *Grady v. Target Store #2381*, 2019 WL 2024507 (D.N.J., May 08, 2019 (ruling on discovery dispute).

13

and society's general understanding about how children behave in general [do] not establish that [a] defendant was negligent." *Struck v. Taubman Co., LLC*, No. A-4925-14T1, 2016 WL 7102732, at *4 (N.J. Super. Ct. App. Div. Dec. 6, 2016). In *Struck*, for example, a father was waiting with his two children at a mall when his two-year-old daughter walked over to investigate her reflection in an elevator door. *Id.* at *1. The father cautioned his daughter to be careful of the elevator doors. *Id.* Regrettably, as she placed her hand on the door, the elevator door opened and her fingers got pinched, causing the father to pull the doors back open and himself suffering injury as a result. *Id.* On summary judgment, the district court dismissed plaintiffs' negligence claims against the elevator company, and the appellate court affirmed. *Id.* at *2–*4. The court rejected plaintiffs' argument "that the propensities of small children, ... [are] something that is widely known and therefore, it is reasonable to expect those persons, who owe children a duty, to both anticipate and guard against the dangers associated with the propensity." *Id.* at *3. Moreover the court rejected the "contention that [defendant] breached its duty to maintain a safe place for patrons, young or old, by maintaining elevators that were in good working order, but which had reflective doors. There is no evidence in the record that this mirror-like surface was unsafe or dangerous, such as notice that others were injured as a result of its reflective nature." *Id.* at *4. The same is true here. There is no evidence to support a finding that Target was negligent simply by installing red bollards, which were properly maintained, but which might appeal to children because of their shape and color.

     No one could fail to sympathize with an injured child. However, it cannot be said that this injury arose from an inherently dangerous condition that created an unreasonable risk of harm. The danger, to the extent not actually created by the plaintiffs' actions, was surely obvious to them: "[U]nder the circumstances, the danger that [Vince] encountered was self-evident and, therefore, not actionable." *Longo*, 374 N.J. Super. at 474.

In *Longo*, for example, a man was power washing his neighbor's roof but suffered a fall. Defendants in that action did not supervise or participate in the plaintiff/helpful neighbor's power washing. The neighbor sued defendants asserting negligence over the condition of the roof. On summary judgment, the court dismissed the action, finding "Nowhere in this record is there any evidence that the drip ledge was improperly installed or maintained, defectively designed, or hidden from view. Instead, as we have previously pointed out, the danger was self-evident. Simply put, there is nothing to establish that the drip ledge or the roof as it existed on the day in question qualified as a danger posing an unreasonable risk of harm to Ronald." *Longo,* 374 N.J. Super. at 475. Accordingly, *Longo* holds that where a danger is obvious or self-evident, there generally is no need to warn. *See also Tighe v. Peterson,* 175 N.J. 240, 242 (N.J. 2002) (finding no duty to warn plaintiff who frequented the pool of danger of diving in the shallow end of the swimming pool).

Although "*Longo* involved the duty that a social host owes to a guest, the principles set forth in those cases also apply to determining whether, under the circumstances presented, a business owner owes a duty to warn a patron of a dangerous condition that is open and obvious." *Jimenez v. Applebee's Neighborhood Grill & Bar,* No. A-2247-13T2, 2015 WL 893236, at *4 (N.J. Super. Ct. App. Div. Mar. 4, 2015). The danger of falling from a roof is obvious. "[T]he obviousness of the danger is an absolute defense to plaintiff's failure to warn action in this case. N.J.S.A. 2A:58C–3a(2), –4. . . As noted in the Restatement (Third) of Torts: Products Liability § 2 comment j, warnings would lose their efficacy and meaning if they were placed on every instrument known to be dangerous, such as a knife, scissor, glass, bat, ball, bicycle, or other product that poses a generally-known risk of injury if misused, dropped, or fallen from." *Mathews v. Univ. Loft Co.*, 387 N.J. Super. 349, 362–63, 903 A.2d 1120, 1128–29 (App. Div. 2006).

Plaintiffs' claims here fail for obviousness. A sphere is not flat; cement is not soft; children climb on things, particularly if permitted to do so by

15

caregivers. The danger of falling should be obvious, perhaps even to a child, but certainly to the adult caring for him. As Liza admitted during her deposition, and as shown in the video surveillance, she watched and interacted with Vince as he played on the bollard. (*See* DE 88-10 (Liza Costello deposition) p. 60, 65, 78–80; DE 88-11 (Store Video)) She says she told him to get off because "he could fall." *Id.* p. 60, 65, 78–79) Assuming that to be true (the video has no sound), the video shows no effort to prevent Vince from playing on the bollard; indeed Liza acquiesced in his returning to the bollard after putting his shoes back on him, and he continued to play there as she sat on a bench nearby. Thus, "even if the conditions noted could be considered dangerous, no reasonable fact finder could conclude that [plaintiff] was unaware of those conditions." *Endre v. Arnold,* 300 N.J. Super. 136, 143 (App. Div.), *certif. denied,* 150 N.J. 27 (1997); *see also Longo, supra.*[10]

Accordingly, I find that Plaintiffs have failed to establish that Target breached a duty to exercise reasonable care and summary judgment is granted in favor of Target on Count 1. It follows that Plaintiffs' remaining claims must also be dismissed. Count 2, for loss of consortium, is "derivative of [plaintiff's] personal injury claims and is therefore not viable without those claims." *Calender v. NVR Inc.*, 548 F. App'x 761, 764 (3d Cir. 2013). Count 3 is not a cause of action, but rather a demand for uncompensated medical expenses, and is likewise dependent on a finding of liability on Count 1. (*See* DE 1-2 at 5). Count 3 is therefore also dismissed.

---

[10] Even Plaintiffs' expert, Dr. Sugarman, concedes that no warning is needed where a guardian was aware that a child was, *e.g.*, jumping up and down on a red bollard. In such an instance, Dr. Sugarman agreed that no warning from Target would be necessary. (DE 88-14 p. 111–112)

### III. Conclusion

For the reasons set forth above, Target's motion for summary judgment (DE 88) is granted.

An appropriate order follows.

Dated: April 14, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**